**AMY KARLIN**
California State Bar No. 150016
Interim Federal Public Defender
**HOWARD SHNEIDER**
California State Bar No. 309492
**DANIEL T. LEE**
California State Bar No. 343306
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081
Howard_Shneider@fd.org
Daniel_Lee@fd.org
Attorneys for Defendant

DARWIN RIVERA-FLORES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DARWIN RIVERA-FLORES,<br>Defendant. | Case No. 2:26-cr-00598-MCS<br>**NOTICE OF MOTIONS AND MOTIONS TO:**<br>**1) COMPEL DISCOVERY**<br>**2) PRESERVE EVIDENCE**<br>**3) LEAVE TO FILE FURTHER MOTIONS**<br>**WITH MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** |

TO: ACTING UNITED STATES ATTORNEY BILAL ESSAYLI AND ASSISTANT UNITED STATES ATTORNEYS MICHAEL WHEAT AND MINJAE KIM:

Please take notice that the defendant Darwin Rivera, by and through counsel, Deputy Federal Public Defenders Howard Shneider and Daniel T. Lee, hereby moves this court for an order to Compel Discovery, Preserve Evidence and Leave to File Further

Motions and submits the following Points and Authorities in support of his motions.[1]

The parties have met and conferred, and the government indicated on October 23, 2026, that it will not produce any of the previously requested discovery that is the subject of this motion.

Respectfully submitted,

AMY KARLIN
Interim Federal Public Defender

DATED: October 26, 2026

By */s/ Howard Shneider*

HOWARD SHNEIDER
Deputy Federal Public Defender
Attorney for DARWIN RIVERA-FLORES

By */s/ Daniel T. Lee*

DANIEL T. LEE
Deputy Federal Public Defender
Attorney for DARWIN RIVERA-FLORES

[1] The parties are also filing a joint stipulation to continue the pretrial motion filing and opposition deadlines later today; the defense still agrees that those deadlines should be extended but is filing the motion to compel today for efficiency.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

A. The President Directs the Departments of Justice and Homeland Security to Prioritize Alleged Voter Fraud in 2025 ..... 1

B. The Investigation of Mr. Rivera ..... 3

C. Defense Discovery Requests and Government Production ..... 4

D. The Defense's October 19, 2026, Supplemental Request. ..... 7

III. ARGUMENT ..... 8

A. The government has expansive disclosure obligations. ..... 8

1. Federal Rule of Criminal Procedure 16. ..... 8

2. *Brady* Material. ..... 9

B. Specific Discovery Requests ..... 10

C. The Court should order the government to produce the requested materials. ..... 13

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
373 U.S. 83 (1963) .......... 4, 8

*Carriger v. Stewart*,
132 F.3d 463 (9th Cir. 1997) (en banc) .......... 10

*Common Cause v. DOJ*,
1:26-cv-01252 (D.D.C.), ECF 45-7 .......... 2

*Comstock v. Humphries*,
786 F.3d 701 (9th Cir. 2015) .......... 9, 13

*CNA v. Mullin*,
4:26-cv-10680-AMO .......... 3

*Giglio v. United States*,
405 U.S. 150 (1972) .......... 4

*Horton v. Mayle*,
408 F.3d 570 (9th Cir. 2005) .......... 13

*Kyles v. Whitley*,
514 U.S. 419 (1995) .......... 9, 10

*United States v. Agurs*,
427 U.S. 97 (1976) .......... 9

*United States v. Blanco*,
392 F.3d 382 (9th Cir. 2004) .......... 10

*United States v. Bryan*,
868 F.2d 1032 (9th Cir. 1989) .......... 11

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) .......... 9, 10

*United States v. Cloud*,
102 F.4th 968 (9th Cir. 2024) .......... 10, 13

*United States v. Gamez-Orduno*,
235 F.3d 453 (9th Cir. 2000) .......... 10

*United States v. Henthorn*,
931 F.2d 29 (9th Cir. 1991) .......... 4

## TABLE OF AUTHORITIES


**Page(s)**

*United States v. Hernandez Meza*,
720 F.3d 760 (9th Cir. 2013) .......... 8, 9

*United States v. Price*,
566 F.3d 900 (9th Cir. 2009) .......... 10

*United States v. Soto-Zuniga*,
837 F.3d 992 (9th Cir. 2016) .......... 8, 9, 13

*United States v. Stever*,
603 F.3d 747 (9th Cir.2010) .......... 8

*Youngblood v. West Virginia*,
547 U.S. 867 (2006) .......... 9

*United States v. Zuno-Arce*,
44 F.3d 1420 (9th Cir. 1995) .......... 10

**Federal Rules**

Fed. R. Crim. P. 12 .......... 4

Fed. R. Crim. P. 16 .......... 8, 9, 13

Fed. R. Crim. P. 16(a)(1)(E)(i) .......... 8

Fed. R. Crim. P. 16(a)(1)(G) .......... 4

Fed. R. Crim. P. 26 .......... 4

Rule 12(b)(4) .......... 4

Rule 404(b) .......... 8

Rule 609 .......... 4

**Federal Statutes**

18 U.S.C. § 611 .......... 1

18 U.S.C. § 1015(e) .......... 1

18 U.S.C. §1015(f) .......... 1

18 U.S.C. § 3500 .......... 4

## TABLE OF AUTHORITIES

**Page(s)**

52 U.S.C. § 20511(2)(A) .................... 1

**Regulations**

6 C.F.R. § 139.35(d) .................... 3

**Other Authorities**

Cooke, Kristina and Eisler, Peter, *White House pushes for speedy review of voter rolls in hunt for noncitizen voters*, REUTERS (Sept. 24, 2026), available at: https://www.reuters.com/legal/government/white-house-pushes-speedy-review-voter-rolls-hunt-noncitizen-voters-2026-09-24/ .................... 3

Corasaniti, Nick, and Aleaziz, Hamed, *Trump Administration Begins Blitz to Find Elusive Voter Fraud Ahead of Midterms*, NEW YORK TIMES (Sept. 2, 2026) .................... 3

*Noncitizen Voters*, PROPUBLICA (Aug. 14, 2026), available at: https://www.propublica.org/article/noncitizen-voting-trump-homeland-security-investigations .................... 2, 3

## I.INTRODUCTION

On August 26, 2026, Mr. Rivera was charged in a complaint with violations of 18 U.S.C. § 1015(e) and 52 U.S.C. § 20511(2)(A), alleging that he knowingly made a false statement or claim to citizenship in order to register to vote or to vote in any federal, state, or local election, and that he knowingly and willfully deprived the residents of California of a fair and impartially conducted election process by knowingly submitting a voter registration application that he knew to be materially false, fictitious, or fraudulent. Dkt. 2. He was later indicted on one count of making a false claim to U.S. citizenship in connection with registering to vote in violation of 18 U.S.C. §1015(f). Dkt. 17. Defense counsel submitted a general request for discovery and a supplemental specific request regarding Agent Kuzma's investigation of Mr. Rivera on September 15, 2026.

The government provided an initial discovery production on September 29, 2026, totaling 384 pages. However, the discovery production did not respond to a significant portion of defense counsel's initial and supplemental requests. Defense counsel submitted additional supplemental discovery request on October 9, 2026, and October 19, 2026, but to date has not received any additional discovery.

This motion follows.

## II. FACTUAL BACKGROUND

### A. The President Directs the Departments of Justice and Homeland Security to Prioritize Alleged Voter Fraud in 2025

On March 25, 2025, the President issued Executive Order 14248, "Preserving and Protecting the Integrity of American Elections," which directed the Department of Justice (DOJ) to prioritize prosecutions of noncitizens who were alleged to have voted under §§ 611 and 1015(f). Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Shortly thereafter, the Civil Rights Division of the DOJ was tasked with investigating voter fraud and began sending letters to election officials in dozens of states, claiming that they were failing to comply with "list maintenance procedure requirements of the Help America Vote Act," and demanding electronic copies of the full statewide voter registration lists for

each of these states. *See* Exhibit A, Administrative Record Joint Appendix Volume 7, *Common Cause v. DOJ*, 1:26-cv-01252 (D.D.C.), ECF 45-7 at 2-25.

During this same period, DHS Homeland Security Investigations (HSI) began redirecting more than 6,000 agents to immigration enforcement, diverting most of the agency from its normal duties. Exhibit B, Peter Elkind et al, *Inside Trump's Failed Hunt for Noncitizen Voters*, ProPublica (Aug. 14, 2026), available at: https://www.propublica.org/article/noncitizen-voting-trump-homeland-security-investigations, at 7. In July 2025, HSI began running publicly available state voter rolls through federal databases to identify potential noncitizen voters, despite warnings from HSI analysts that this attempt would produce an "ungodly number of false positives," and concerns from DOJ officials that such an attempt to transfer voter rolls wholesale from DOJ to DHS may not be legal. Exhibit B at 8, 10. HSI's cross-border financial crimes unit was given tens of thousands of names and was told to prioritize them over money laundering and fraud cases. *Id.* at 14-15.

U.S. Attorney's Offices across the country were also directed by the White House to urgently investigate and prosecute any such cases involving alleged election fraud or voting by noncitizens. In February 2026, Nick Davis, a DOJ appointee helping lead the election-fraud effort, emailed both Ohio United States Attorney's Offices for an "election integrity" update, asking, "How close are we to complaints/indictments, how many subjects, what issues you've run into, how many referrals have been closed and why, how helpful HSI has been." *Id* at 16-17. Similarly, in March 2026, Davis also told the second-in-command at the USAO for the District of Minnesota, Joe Teirab, that such cases "were so high priority that [the USAO First Assistant] and his staff couldn't decline to move forward on them without express approval from agency higher-ups." *Id.* at 2. A few weeks later, he demanded a status report within hours; Teirab replied that after subpoenaing records on about 130 people, only one had been referred for prosecution, that "[t]he HSI task force has been disjointed and disorganized," and that the process had been "dysfunctional." *Id.*

In one Minnesota county, HSI subpoenaed voting histories for 13 people, only six of whom lived there. *Id.*

In recent months, there has been a renewed push to investigate and prosecute cases of alleged voter fraud; on August 28, 2026, an e-mail broadcast was sent to all Special Agents in Charge at HSI announcing that "beginning September 1, 2026, HSI will launch a coordinated Criminal Voter Fraud surge initiative to pursue investigative leads, conduct field interviews, and support timely prosecutorial review." Exhibit C, Amended Administrative Record in *CNA v. Mullin*, 4:26-cv-10680-AMO, ECF 77-1 at 2. The New York Times and Reuters have recently reported that this renewed surge in voter fraud investigations "is being directed by the White House—and that agency officials are struggling to meet the goals set out for them." Cooke, Kristina and Eisler, Peter, *White House pushes for speedy review of voter rolls in hunt for noncitizen voters*, REUTERS (Sept. 24, 2026), available at: https://www.reuters.com/legal/government/white-house-pushes-speedy-review-voter-rolls-hunt-noncitizen-voters-2026-09-24/. As part of this surge, hundreds, if not thousands, of additional officials at USCIS, HSI, and DOJ have been reassigned to work on the "Unlawful Voter Initiative." *Id.* at 4, *see also* Corasaniti, Nick, and Aleaziz, Hamed, *Trump Administration Begins Blitz to Find Elusive Voter Fraud Ahead of Midterms*, NEW YORK TIMES (Sept. 2, 2026). The New York Times also reported that agents at both USCIS and HSI had recently received "training videos," documents, and internal guidance about how to review the voter data of each state, make referrals to HSI for investigation, and eventually prosecute the cases. *Id.*

**B. The Investigation of Mr. Rivera**

As described in materials provided in the government's initial discovery production, Homeland Security Investigations Special Agent Christopher Kuzma first began investigating Mr. Rivera in February 2026 for allegedly obstructing DHS agents' access to the federal building in Camarillo, California. Agent Kuzma issued a Central Violations Bureau (CVB) citation to Mr. Rivera under 6 C.F.R. § 139.35(d), a Class C Misdemeanor. According to the government's own reports of investigation, Agent Kuzma "continued to

conduct record checks" on Mr. Rivera after issuing the citation and before the May 2, 2026, CVB court date. Those checks apparently included a search of the California Secretary of State's voter-registration records. Exhibit D, August 25 Kuzma ROI at 1. For example, the initial production includes a printout of the Secretary of State's "My Voter Status" page for Mr. Rivera, dated February 25, 2026, one week after the citation was issued. Exhibit E, Voter Status Page. In addition, on April 8, 2026, Agent Kuzma hand-served a Customs Summons on the Los Angeles County Registrar-Recorder/County Clerk. A representative of the Los Angeles County Counsel's Office then contacted him to explain that some voting records had to be redacted under state law. The next day, he received a redacted voter-registration form by email. Exhibit D, Kuzma ROI at 1-2.

However, in his affidavit attached to the amended complaint, Agent Kuzma links the voter-registration investigation to a text message from an unknown number that he received on April 27, 2026, which he said "referenc[ed] qualified immunity and the upcoming midterm elections." He said this message and a later one "demonstrate RIVERA-FLORES has both an interest in the voting process and an intent to participate in the election process." Compl. At 11-13. However, the government's own records show that Agent Kuzma had already searched Mr. Rivera's voter-registration status more than two months before that text message arrived. *See* Exhibits D and E.

### C. Defense Discovery Requests and Government Production

On September 15, 2026, defense counsel emailed the government a formal written discovery request under Federal Rules of Criminal Procedure 12, 16, and 26, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), and the Jencks Act, 18 U.S.C. § 3500. The letter requested, among other items: Mr. Rivera's statements, Miranda waivers, and agents' notes; all reports, notes, and investigative files, including those of other agencies; expert disclosures under Rule 16(a)(1)(G); witness information and early *Jencks* material, including grand jury transcripts; *Brady, Giglio*, and *Henthorn* material; notice under Rules 404(b), 609,

and 12(b)(4); electronic-database records about Mr. Rivera; and unredacted copies of all discovery.

That same day, defense counsel served a separate, targeted request about how Agent Kuzma searched for and obtained Mr. Rivera's voter-registration records. The request was prompted by a DHS whistleblower report that Senators Padilla and Schumer announced on September 14, 2026. According to the press release, the report indicated that DHS and HSI agents “may have broken state laws in their efforts to search for voter fraud” and that “‘supplemental magic’ in the form of made-up data was utilized in some cases.” The defense requested six categories of records: 1) the databases and websites Agent Kuzma used to search voter-registration records; 2) the steps he followed and any personal information he entered, such as date of birth, Social Security number, or home address; 3) any record showing whether he "ever had to check a box swearing he was Mr. Rivera (as opposed to law enforcement)" to obtain the records; 4) information about whether he violated the Secretary of State's stated privacy policy; 5) any record showing whether his investigation used "supplemental magic" in the form of fictitious data or records; and 6) any other information showing that the investigation violated state or federal law or policy.

On September 29, 2026, the government made its first and only production to date, totaling 323 pages of paper discovery. The production included body camera footage and audio recordings from the February citation incident, charging and booking papers from both the February citation and his recent arrest on this case, redacted records returned in response to grand jury subpoenas to the California Department of Motor Vehicles, the Los Angeles County Registrar, and the California Secretary of State, warrant applications, Mr. Rivera's A-file and other DHS/USCIS records, criminal-history printouts, five HSI Reports of Investigation, the February 25, 2026 voter-status printout referenced above, and photographs and video of the anonymous messages Agent Kuzma received.

However, the production left most of the September 15 requests unanswered. For example, it did not respond in any meaningful way to the voter-database request. The only related material it contains is the voter-status printout itself and the general statement in

Agent Kuzma's report that he ran "record checks" through the Secretary of State's Elections Division. Exhibit D. The production contains nothing showing which databases or portals Agent Kuzma used, what identifying information he entered, how he obtained access to a page formatted for the voter's own use (*see* Exhibit E, My Voter Status), or whether any fictitious data was involved.

The production also shows that discovery Agent Kuzma himself identified exists was not produced. For example, while his report of investigation describes the April 8, 2026, Customs Summons and his contact with the Los Angeles County Counsel's Office, neither the summons nor the correspondence is in the production. The County records the government did produce are heavily redacted, and while Agent Kuzma wrote that he "is waiting for additional unredacted certified voting records pertaining to RIVERA-FLORES from the Los Angeles County registrar office," none have been produced to date. And although the government produced the records returned in response to its grand jury subpoenas, it did not produce the subpoenas themselves.

Several other categories of the September 15 request also remain unanswered, including: any handwritten notes from agents and any Miranda waiver, expert disclosures and witness information, *Brady, Giglio, and Henthorn* material, and audit or query logs for any examinations or tests conducted during their investigation, such as signature verification or matching.

**D. The Defense's October 9, 2026, Supplemental Request**

On October 9, 2026, after reviewing Production 1, defense counsel served a second supplemental request. The letter renewed the request for "any outstanding discovery that is responsive to my September 15, 2026, supplemental request regarding database searches, data fabrication, and violations of state law." It explained that the additional materials "are relevant to understanding how Agent Kuzma investigated this case and why he took the investigative steps that he did," and "are also relevant to Agent Kuzma's credibility." The letter then made 11 specific requests, most of them based directly on the government's own production: 1) Records explaining why Agent Kuzma ran a Secretary of State voter-

registration check between February 18 and May 2, 2026, during an investigation of a CVB obstruction offense; 2) Communications from superiors directing Agent Kuzma to investigate voter-registration fraud, including any connection to the "Unlawful Voter Initiative" described in the whistleblower report; 3) Records showing whether Agent Kuzma accessed DHS data, whether Mr. Rivera appeared in a data-match lead sent to HSI Los Angeles, and which other databases were consulted; 4) Voter-fraud training materials Agent Kuzma received, including the training video described in the whistleblower report; 5) An unredacted copy of the June 22, 2026 "Voter Fraud Weekly" report section titled "HSI Los Angeles Election Integrity Efforts," which was disclosed in redacted form through FOIA litigation; 6) The grand jury subpoenas to the DMV, the Los Angeles County Registrar, and the Secretary of State, plus unredacted copies of the returns; 7) Unredacted copies of every grand jury subpoena naming Mr. Rivera, including any of the July 13 and September 10, 2026, subpoenas to the Registrar reported in the press; 8) The Customs Summons and unredacted copies of all records returned in response to it; 9) All correspondence with the Los Angeles County Counsel's Office; 10) The grand jury transcripts or audio recordings, so the defense can determine whether Agent Kuzma misled the grand jury about when and why the voter-fraud investigation began; 10) Complaints and internal-affairs records about Agent Kuzma, including any related to his August 2023 retirement from HSI and his August 2025 departure from the private sector, along with a renewed *Henthorn* and *Brady* request; and 11) a copy of the sealed complaint at Docket No. 1, or confirmation that USAO_00000009–18 is that document.

**D. The Defense's October 19, 2026, Supplemental Request.**

On October 19, the defense requested additional materials via email related to Agent Kuzma's communications that allegedly were with Mr. Rivera and Agent Kuzma's communications with other agents regarding the investigation. More specifically, the defense requested: all text messages to and from Agent Kuzma with any of the numbers associated with Mr. Rivera; any evidence showing the seven phone numbers Agent Kuzma claims are associated with Mr. Rivera are in fact Mr. Rivera's; the names of any other

suspects or witnesses with whom Agent Kuzma communicated by phone or text from his work phone's unblocked number; all communications of any kind between the agents about the investigation, including text messages, WhatsApp messages, emails, Signal messages, and any other form of written communication.

At the time of this filing, the government has produced no additional discovery since their initial production. The government has also said it will withhold grand jury transcripts and other *Jencks* material until one week before trial. It has deferred any detailed Rule 404(b) disclosure to an unspecified "later date," although will presumably provide that detail if the case proceeds to trial via a motion in limine to admit 404(b) evidence.

## III. ARGUMENT

### A. The government has expansive disclosure obligations.

A defendant's right to discovery emanates from, among other sources, Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).

#### 1. Federal Rule of Criminal Procedure 16.

Federal Rule of Criminal Procedure 16 "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir.2010). Rule 16 requires the government to provide all material in the government's possession, custody, or control if the item is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). "Materiality is a low threshold; it is satisfied so long as the information . . . would have helped to prepare a defense." *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (cleaned up*); see also United States v. Hernandez Meza*, 720 F.3d 760, 768 (9th Cir. 2013) ("Information is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path.") (cleaned up).

Only a simple request is needed to trigger the defendant's right to discovery. *Id.* at 768. At the same time, the burden on the government is heavy: "Lack of knowledge or even a showing of due diligence won't excuse noncompliance." *Id.* As the Ninth Circuit admonished, "[i]t thus behooves the government to interpret the disclosure requirement

broadly and turn over whatever evidence it has pertaining to the case." *Id.* Rule 16 requires the government to produce discovery beyond evidence related to trial defenses. For example, in *United States v. Soto-Zuniga*, the Ninth Circuit held the district court abused its discretion by denying a defense motion for discovery regarding arrests and vehicle searches at a border patrol immigration checkpoint to support his motion to suppress. 837 F.3d 992, 998–1002 (9th Cir. 2016).

**2. *Brady* Material.**

Under *Brady v. Maryland* and its progeny, "it is, of course, beyond dispute that… a defendant is entitled to evidence both favorable to the accused and material either to guilt or to punishment." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). at 1031 (internal citations and quotations omitted). *Brady* evidence can be favorable "either because it is exculpatory or impeaching." *Id.* The duty to disclose such evidence is applicable even when there has been no request by the defendant. *United States v. Agurs*, 427 U.S. 97, 107 (1976). If information would be advantageous to the defendant, or 'would tend to call the government's case into doubt,' it is favorable. *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015) (citations omitted).

Importantly, the rule "encompasses evidence known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419 at 437 (1995); *see also Youngblood v. West Virginia,* 547 U.S. 867, 869-70 (2006) ("*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor'").

> [E]xculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does. That would undermine *Brady* by allowing the investigating agency to prevent production by keeping a report out of the prosecutor's' hands until the agency decided the prosecutor ought to have it ....

*United States v. Blanco*, 392 F.3d 382, 388 (9th Cir. 2004) (quoting *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995). To comply with *Brady*, "[t]he prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf." *Carriger v. Stewart*, 132 F.3d 463, 479-80 (9th Cir. 1997) (en banc) (citations omitted); s*ee also Whitley*, 514 U.S. at 437. In short, the prosecution "may not be excused from disclosing what it does not know but could have learned." *Id.* Prosecutors should freely disclose such evidence pretrial "without attempting to predict whether its disclosure might affect the outcome of the trial." *Bundy*, 968 F.3d 1019 at 1033.

The Ninth Circuit has held that the "materiality standard usually associated with *Brady* . . . should not be applied to pretrial discovery of exculpatory materials. . . . [T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." *United States v. Cloud*, 102 F.4th 968, 979 (9th Cir. 2024); *see United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) ("[I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made.") (cleaned up).

"The prosecution is trusted to turn over evidence to the defense because its interest 'is not that it shall win a case, but that justice shall be done.'" *United States v. Bundy*, 968 F.3d 1019, 1023 (9th Cir. 2020) (citation omitted). Prosecutors also have "an affirmative obligation to learn of potentially favorable evidence and provide it to the defense." *Id.* at 1038. *Brady* obligations extend to pretrial motions as well. *See, e.g., United States v. Gamez-Orduno*, 235 F.3d 453, 461–62 (9th Cir. 2000) (finding *Brady* violation when the government withheld a transcript of an interview with a co-defendant that contradicted the government's argument regarding standing in a motion to suppress).

**B. Specific Discovery Requests**

Mr. Rivera moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes any and all items

listed below that are in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." *See United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989).

1. *Brady, Giglio, and Henthorn* material;

2. The databases and websites Agent Kuzma used to search voter-registration records;

3. the steps he followed and any personal information he entered, such as date of birth, Social Security number, or home address;

4. any record showing whether he "ever had to check a box swearing he was Mr. Rivera (as opposed to law enforcement)" to obtain the records;

5. information about whether he violated the Secretary of State's stated privacy policy;

6. any record showing whether his investigation used "supplemental magic" in the form of fictitious data or records;

7. any other information showing that the investigation violated state or federal law or policy;

8. any handwritten notes from agents and any Miranda waiver;

9. expert disclosures and witness information;

10. audit or query logs for any examinations or tests conducted in the course of the investigation (such as signature verification or matching);

11. Records explaining why Agent Kuzma ran a Secretary of State voter-registration check between February 18 and May 2, 2026, during an investigation of a CVB obstruction offense that had nothing to do with voting;

12. Communications from superiors directing Agent Kuzma to investigate voter-registration fraud, including any connection to the "Unlawful Voter Initiative" described in Part II., *supra*;

13. Records showing whether Agent Kuzma accessed DHS data, whether Mr. Rivera appeared in a data-match lead sent to HSI Los Angeles, and which other databases were consulted;

14. Any voter-fraud training materials Agent Kuzma received, including the training video described in the whistleblower report;

15. An unredacted copy of the June 22, 2026 "Voter Fraud Weekly" report section titled "HSI Los Angeles Election Integrity Efforts," which was disclosed in redacted form through FOIA litigation;

16. Unredacted copies of the grand jury subpoenas to the DMV, the Los Angeles County Registrar, and the Secretary of State, plus unredacted copies of the returns;

17. Unredacted copies of every grand jury subpoena naming Mr. Rivera, including any of the July 13 and September 10, 2026, subpoenas to the Registrar reported in the press;

18. The Customs Summons and unredacted copies of all records returned in response to it;

19. All correspondence with the Los Angeles County Counsel's Office;

20. The grand jury transcripts or audio recordings, so the defense can determine whether Agent Kuzma misled the grand jury about when and why the voter-fraud investigation began;

21. Complaints and internal-affairs records about Agent Kuzma, including any related to his August 2023 retirement from HSI and his August 2025 departure from the private sector;

22. Any membership by Agent Kuzma in the "I'm 10-15" Facebook group or similar social media groups for DHS agents;

23. A copy of the sealed complaint at Dkt. 1.

24. All text messages to and from Agent Kuzma with any of the numbers associated with Mr. Rivera;

25. Any evidence showing the seven phone numbers Agent Kuzma claims are associated with Mr. Rivera are in fact Mr. Rivera's;

26. The names of any other suspects or witnesses with whom Agent Kuzma communicated by phone or text from his work phone's unblocked number;

27. All communications of any kind between the agents about the investigation, including text messages, WhatsApp messages, emails, Signal messages, and any other form of written communication.

**C. The Court should order the government to produce the requested materials.**

Here, the defense requests are related to how exactly Agent Kuzma conducted the investigation under both under Rule 16 and *Brady*, and importantly, *when* and at whose direction. The records are material under Rule 16 because they will help the defense learn if there are any weaknesses or irregularities with the investigation and whether there is any impeachment material that could be used at trial to cross-examine the investigating agents. *See Soto-Zuniga*, 837 F.3d at 1003 ("Materiality is a low threshold; it is satisfied so long as the information . . . would have helped to prepare a defense.") (cleaned up). The records are also material and exculpatory under *Brady*, because they may help "bolster the defense case or impeach the prosecutor's witnesses." *Cloud*, 102 F.4th at 979.

If, as the defense suspects, Agent Kuzma was prompted to action in the voter registration fraud investigation by orders from DOJ or from HSI leadership, that calls into question the integrity of the investigation and reliability of the underlying records. The historical backdrop over which the investigation took place shows the President and the highest levels of DOJ all had and still have a keen interest in bringing any and all cases of voter registration fraud involving noncitizens. That Agent Kuzma's citation of Mr. Rivera for a low-level CVB violation led Agent Kuzma to investigate Mr. Rivera's voter registration status within a week of the citation raises many questions. The defense cannot know the extent to which Agent Kuzma's investigation was influenced by a motive to make cases and satisfy higher-ups without the requested discovery, and "bias is a well-established form of impeachment evidence." *Horton v. Mayle,* 408 F.3d 570, 578 (9th Cir. 2005). "Evidence that has any [] impeachment value is, by definition, favorable." *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015).

Further, as described above, there is reason to believe data relied on by HSI in its voter fraud investigations is faulty or was obtained in violation of state law. That information is critical for purposes of impeaching the investigating agents and allowing the jury to decide for itself whether the underlying records are reliable or not.

## IV. CONCLUSION

For the foregoing reasons, Mr. Rivera respectfully requests that this Court grant the above requested motions and leave to file further motions.